IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| THEODORE H. HELSEL, SR. and DOROTHY A. HELSEL, | Bankruptcy No. 03-30620 BM |
| Debtors | Chapter 7 |
| JAMES R. WALSH, TRUSTEE, TRUSTEE OF THE BANKRUPTCY ESTATE, | |
| Plaintiff | Adversary No. 04-2423 BM |
| v. | Complaint To Revoke Discharge And/ Or Together With Action To Compel Turnover Of Future Payments Due |
| THEODORE H. HELSEL, SR. and DOROTHY A. HENSEL | Under Annuity And Account For And Turn Over To Estate Property Received And Expended Since Commencement |
| Defendants | Of Case |

Appearances:   James R. Walsh, Esq., Chapter 7 Trustee
Mark A. Gregg, Esq., for Debtors/Defendants

## MEMORANDUM OPINION

The chapter 7 trustee seeks to have the discharges of debtors Theodore and Dorothy Helsel revoked. He also requests an order directing debtor Theodore Helsel to turn over certain post-petition payments he has received or will receive which arise from settlement of a lawsuit for the wrongful death of his daughter.

Debtors deny that valid grounds for revoking their discharges exist and request leave to amend their schedules so they may exempt the payments and thereby avoid having to turn them over to the trustee.

AO 72A

For reasons provided in this memorandum opinion, debtors' discharges will be revoked and the request to amend their exemptions will be denied. Debtor Theodore Helsel will be directed to turn over to the trustee any post-petition payments he has or will receive which arise from settlement of the lawsuit for the wrongful death of his daughter.

– FACTS –

Debtors were married in 1980. It is the second marriage for each of them.

Sharon Helsel Stoner, the daughter of debtor Theodore Helsel and his previous wife Florence Helsel, perished along with her husband in a catastrophic flood in Johnstown, Pennsylvania, in July of 1977. She was twenty-three years old at the time and died intestate.

Debtor Theodore Helsel and Florence Helsel had separated prior to the flood and were divorced in September of 1977.

As executor of the estate of Sharon Helsel Stoner, Florence Helsel brought a wrongful death action in state court in 1978 against Bethlehem Steel and others. The complaint alleged that the death of Sharon Helsel Stoner was caused by the negligence of Bethlehem Steel and/or other defendants.

The state court approved a settlement of the lawsuit on May 12, 1989, which provided, among other things, that payments totaling $7,099.74 per year were to be made for a period of twenty years to the estate of Sharon Helsel Stoner. The final annual payment is scheduled to occur in the year 2008.

One-half of the settlement proceeds – i.e., $3,549.97 per year for twenty years – were awarded to Florence Helsel, who had remarried by then. The remaining one-half was held in abeyance until further order of court because the former wife of debtor Theodore

Hensel had contested his right thereto. She claimed debtor Theodore Helsel had forfeited his right to the remainder of the settlement proceeds by virtue of his conduct during their daughter's lifetime.

For reasons not relevant to this case, the state court decided in favor of debtor Theodore Helsel and on October 25, 1989, directed Florence Helsel, as executor of the estate of Sharon Helsel Stoner, to distribute the settlement proceeds according to the intestacy laws of Pennsylvania.

Continental Casualty Company was the insurer of some of the named defendants in the wrongful death lawsuit. Under the provisions of the settlement agreement of May 12, 1989, it assumed responsibility for making the agreed-to annual payments to debtor Theodore Helsel and his former wife.

On February 6, 1990, after executing a settlement agreement with Continental Casualty and the estate of Sharon Helsel Stoner, debtor Theodore Helsel began receiving annual payments from Continental Casualty in the amount of $3,549.97. The final annual payment is scheduled for the year 2008.

Debtor Theodore Helsel has received a payment in the amount of $3,549.97 every year since 1990. He last received a payment on October 25, 2003, two months *after* debtors filed their bankruptcy petition.

Debtors filed a voluntary joint chapter 7 petition on August 26, 2003.[1] The schedules attached to the petition identified assets with a total declared value of $147,652.00 and liabilities totaling $162,873.50. Debtor Theodore Helsel's interest in the above annual

---

[1] This is not debtors' first venture into bankruptcy. They previously filed a joint chapter 7 petition in the 1985 and subsequently received discharges.

payments was not indicated anywhere on the schedules or on debtors' statement of financial affairs, all of which debtors declared under penalty of perjury were true and correct to the best of their knowledge, information and belief.

Debtors declared on Schedule B, Personal Property, that they had no interest in any annuity; that there were no liquidated debts owed to them; and that they had no interest in property of any kind not otherwise listed. Despite the opportunity to disclose the interest of debtor Theodore Helsel in the above annual payments, debtors answered in the negative.

The only income listed on Schedule J, Current Income, came from debtor Theodore Helsel's social security and a pension from his former employer and from debtor Dorothy Helsel's employment as a licensed practical nurse. No reference was made to the above annual payments received by debtor Theodore Helsel.

On their statement of financial affairs, debtors indicated that they had no income from any source other than their employment during the two-year period prior to commencement of their bankruptcy case. No reference was made to annual payments debtor Theodore Helsel had received from Continental Casualty in the years 2001 and 2002.

Debtors also did not disclose the interest of debtor Theodore Helsel in the annual payments at the § 341 meeting, which took place on October 6, 2003. Debtors stated under oath that they had no interest in any annuities and that they did not anticipate receiving anything of value during the six-month period following commencement of their bankruptcy case. This was false. As was indicated, debtor Theodore Helsel received a scheduled annual payment from Continental Casualty in the amount of $3,549.97 on

- 4 -

October 25, 2003, less than three weeks after the § 341 meeting concluded and less than three months after commencement of their bankruptcy case.

Debtors Theodore and Dorothy Helsel received their discharges on December 31, 2003.

On March 29, 2004, less than three months later, the chapter 7 trustee commenced this adversary action against debtors and Continental Casualty. He asserted, among other things, that debtors' failure to disclose debtor Theodore Helsel's interest in and receipt of the last of the above annual payments on October 25, 2003, was cause for revoking debtors' discharges pursuant to § 727(d)(1) and (2) of the Bankruptcy Code. He also seeks an order directing debtor Theodore Helsel to turn over any annual payment he has received from Continental Casualty since the commencement of the bankruptcy case as well as all future scheduled payments. Finally, the chapter 7 trustee seeks an order directing Continental Casualty to turn over to him all future annual payments to debtor Theodore Helsel.

In their answer to the complaint debtors deny that their failure to disclose all of their assets in their schedules or statement of financial affairs was intentional. Failure to disclose debtor Theodore Helsel's interest in the annual payments, debtors maintain, was due to a *bona fide* belief that said interest was not an estate asset and did not have to be disclosed. To the extent that the interest is an asset of the bankruptcy estate, debtors contend that the payments are exemptible in their entirety pursuant to § 522(d)(10)(E) of the Bankruptcy Code and request leave to amend their schedules to take such an exemption.

- 5 -

Continental Casualty, which is merely a stakeholder with respect to future annual payments, has entered into a stipulation which was approved by this court wherein it agreed to make future annual payments to the party determined by the court to be entitled to receive them.

The above adversary action has been tried and is now ready for decision.

– II –

**Revocation Of Discharge**

The trustee seeks to have debtors' discharges revoked pursuant to § 727(d) of the Bankruptcy Code, which provides in part as follows:

> On request of the trustee…, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if –
>
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; [and]
>
> (2) the debtor acquired property that is property of the estate,… and knowingly and fraudulently failed to report the acquisition … of such property, or to deliver or surrender such property to the trustee….

11 U.S.C. § 727(d).

The purpose of a bankruptcy discharge is to relieve an honest but unfortunate debtor from his or her financial burdens and to facilitate a "fresh start". *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993). Because revocation of a discharge is contrary to this policy, § 727(d) must be strictly construed against the party seeking revocation. *In re Rodwell*, 280 B.R. 100, 101 (Bankr. D. N.J. 2002). Revocation of a discharge has the same effect as a denial of discharge and makes the discharge initially granted a nullity. *Midkoff v. Stewart (In re Midkoff)*, 342 F.3d 1194, 1198-99 (10th Cir. 2003).

AO 72A
(Rev. 8/82)

## § 727(d)(1)

According to its express terms, a discharge shall be revoked in accordance with § 727(d)(1) if: (1) the discharge was obtained through fraud; and (2) the party seeking revocation of the discharge did not know about the fraud until after the discharge was granted. These requirements are conjunctive.

The phrase "obtained through" in § 727(d)(1) is causative – i.e., the debtor would not have received a discharge *but for* the debtor's fraud. *White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 925 (9th Cir. 2004)(citing *Lawrence National Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

To satisfy the first of these conjuncts, the party seeking revocation of the discharge must prove that the debtor committed fraud in fact which would have barred the debtor's discharge had it been discovered before discharge was granted. *In re Edmonds*, 924 F.2d at 180. The fraud that was committed must involve intentional wrongdoing. *Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 427 (Bankr. N.D. Ohio 2004). Implied or constructive fraud will not suffice.

The trustee has not indicated the basis on which debtors would have been denied a discharge but for their purported fraud. In particular, he has not specified which of the numerous subparts of § 727(a) would have applied to deny debtors their discharges had their fraud been uncovered first. We can only speculate as to which of these subparts would have come into play. It is not the place of this court, however, to engage in such speculation. The trustee offered nothing at trial concerning this matter.

Also, the trustee offered no evidence at all concerning when he first came to know of debtors purported fraud. As was noted, § 727(d)(1) requires proof that the party seeking

revocation of a discharge did not learn of the alleged fraud until *after* debtors' discharges were granted. Although we tend to surmise that the trustee did not come by such knowledge until after debtors received their discharges on December 31, 2003, the record created at trial provides no basis for so concluding.

## § 727(d)(2)

To prevail under § 727(d)(2), the chapter 7 trustee must prove that: (1) debtors acquired property of the bankruptcy estate; and (2) that debtors knowingly and fraudulently did not report acquisition of the estate asset or deliver it to the trustee.

Debtors admit that debtor Theodore Helsel received an annual payment in the amount of $3,549.97 approximately three months after they had filed their chapter 7 petition and their bankruptcy estate was created. They assert, however, that this payment (as well as the payments due in years 2004, 2005, 2006, 2007 and 2008) is not property of the bankruptcy estate.

This assertion lacks merit. The payment debtor Theodore Helsel received on October 25, 2003, – as well as all payments due in succeeding years – is property of the bankruptcy estate.

Debtors' bankruptcy case commenced when they filed their bankruptcy on August 26, 2003. 11 U.S.C. § 302(a). A bankruptcy estate was created at that time and included, with certain exceptions not relevant here, all legal or equitable interests they had in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

The concept of "property of the estate" is broad in scope. According to the legislative history of § 541(a)(1), it includes "all kinds of property". *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9, 103 S.Ct. 2309, 2314 n.9, 76 L.Ed.2d 515 (1983).

- 8 -

The fact that some of the annual payments did not become due until after commencement of the bankruptcy case does not alter the conclusion that they are estate assets. Of importance in this regard is when the right to receive those payments arose, not when future individual payments become due. Individual payments in this instance are akin to proceeds of estate property for purposes of § 541(a)(6). As such, they are included in the bankruptcy estate.

It remains to be determined whether the second requirement of § 727(d)(2) – i.e., that debtors knowingly and fraudulently did not disclose debtor Theodore Helsel's receipt of estate property – also is satisfied in this instance.

Debtor Theodore testified at trial that he spent the annual payment received on October 5, 2003. After dividing it into six equal portions, he purportedly retained one-sixth for himself and gave one-sixth to each of the five surviving siblings of his deceased daughter Sharon Helsel Stoner. No actual proof – i.e., checks, drafts, or receipts of said payments – was offered at trial.

Debtors also admitted at trial that they knowingly did not inform the trustee that debtor Theodore had received that payment of October 25, 2003. They testified that they were under the impression that they did not have to do so because they believed it was not estate property. We have seen that this reason for not informing the chapter 7 trustee – i.e., because the payments were not estate property – does not hold water.

Debtors denied, however, that their failure to notify the trustee of the receipt of this annual payment was fraudulent. They claimed that the attorney who represented them in their first bankruptcy case filed in 1985 had advised them at the time that debtor Theodore Helsel's right to the annual payments was not an asset of their bankruptcy estate and that

- 9 -

they did not have to disclose the interest on their bankruptcy schedules. Debtors also testified that they informed the secretary to present bankruptcy counsel when counsel was absent from the room what their previous bankruptcy counsel had advised them.

Debtors' attempt to exculpate themselves by foisting responsibility upon previous bankruptcy counsel for their purported belief that the right to such payments was not estate property and consequently did not have to be reported must fail for various reasons.

In the first place, it is dubious that debtors ever had such a conversation with previous bankruptcy counsel. Debtor Theodore Helsel's right to receive the annual payments did not arise until some five years *after* their 1985 bankruptcy filing. Before 1990 he had at most a cause of action for the wrongful death of his daughter. It is not plausible under these circumstances to think that debtors' had a conversation in the year 1985 specifically concerning whether the right to receive such annual payments was an estate asset and had to be disclosed in that bankruptcy case.

Also, counsel in their first bankruptcy case is now dead. He allegedly perished in an automobile accident at some unspecified time after the year 1985. We are inclined to suspect that debtors have placed responsibility for their alleged belief that the right to receive such annual payments was not an estate asset upon previous bankruptcy counsel because he could not contradict their testimony that he so advised them. They apparently thought it was "safe" to blame him for their actions. We think it unlikely that counsel ever advised debtors as they claim he did.

Debtors' testimony that they had informed the secretary of present bankruptcy counsel what their previous bankruptcy counsel had advised them also lacks credibility. The reason they so testified is obvious. Debtors would have us conclude that the secretary

AO 72A
(Rev. 8/82)

told present bankruptcy counsel about what debtors had told them and that, by implication, present bankruptcy counsel must have agreed with what previous bankruptcy counsel allegedly had advised debtors. Responsibility for debtors' failure to reveal debtor Theodore Helsel's receipt of the above annual payment in October of 2003, in other words, lies with present bankruptcy counsel, not with them.

As was just indicated, we seriously doubt that debtors' previous bankruptcy counsel ever so advised them. Moreover, debtors could have called the secretary to present bankruptcy counsel to testify and corroborate their testimony concerning what they told her. Although the secretary was available and debtors could have subpoenaed her, they did not call her to testify on their behalf. This leads us to think that she would not have corroborated their testimony.

Debtor Theodore Helsel also testified at trial that the solicitor of a school district of which Mr. Helsel was a board member advised Mr. Helsel that the above annual payments were not taxable income and did not have to be reported on disclosure statements required of school board members. Debtor Theodore Helsel also testified that the solicitor has since died.

This testimony is highly suspect for the same reason we found suspect testimony concerning what their previous bankruptcy counsel allegedly told them. Moreover, even assuming that the solicitor so advised Mr. Helsel, such advice did not concern whether his interest in the above annual payments was an asset of debtors' bankruptcy estate and had to be disclosed in their bankruptcy case.

To establish the requisite fraud for purposes of § 727(d)(2), the trustee must establish that debtors knowingly intended to defraud him or engaged in such reckless conduct as would justify a finding of fraud. *Matter of Yonikus*, 974 F.2d 901, 905 (7th Cir. 1992). Fraud may be established by evidence that the debtor was aware of the asset and realized that failure to disclose its acquisition would seriously mislead the trustee. *Id*. A finding of fraud may be inferred from a course of conduct or from surrounding circumstances. *Id*.

The totality of the evidence presented at trial convinces us that debtors knowingly intended to defraud the trustee when they did not disclose debtor Theodore Helsel's receipt on October 25, 2003 of the annual payment for the year 2003.

Debtors' attempt to depict themselves at trial as unsophisticated bumpkins who are not capable of intending to deceive the trustee was not persuasive. To the contrary, they are sophisticated and fully understood what they were doing when they failed to disclose Mr. Helsel's receipt of the annual payment for the year 2003.

Prior to his retirement from Bethlehem Steel in the year 1985, debtor Theodore Helsel held numerous supervisory positions which put him in charge of operating various divisions within the mill and was a member of its labor-management relations team. He also was a board member of a local school district for a number of years and was appointed to the Johnstown Airport Authority.

Mr. Helsel's service in these positions, all of which require considerable sophistication, belies his self-depiction as one who could not possibly have undertaken to deceive the trustee when he did not disclose his receipt of the annual payment for the year 2003.

AO 72A
(Rev. 8/82)

The same is no less true of debtor Dorothy Helsel, who is a licensed practical nurse and works in a personal care home for the elderly. Her job duties include reviewing patients' medical charts and dispensing medication to them in the prescribed dosages. Once again, considerably more than a scintilla of sophistication is required to do this.

Moreover, debtors stood to gain considerably at the expense of the trustee as representative of unsecured creditors by not disclosing debtor Theodore Helsel's receipt of the above payment. The annual payment was $3,549.97 not only for the year 2003, but also for each of the years 2004, 2005, 2006, 2007, and 2008.

The total amount of general unsecured debt listed on the bankruptcy schedules is $72,652. The total amount of these six annual payments is $21,300, with which the trustee could make a significant *pro rata* distribution to general unsecured creditors. Had the trustee not come to learn of Mr. Helsel's right to receive these payments, it is questionable whether these creditors would receive any distribution at all. We have no doubt that debtors would have used the payments for their own purposes.

We conclude in light of the foregoing that debtors intended to defraud the trustee when they did not disclose debtor Theodore Helsel's receipt of the annual payment in October of 2003 for the death of his daughter. In addition, we conclude that all of the requirements of § 727(d)(2) of the Bankruptcy Code are satisfied in this instance and that debtors' discharges must be revoked.

**Exemption Pursuant to § 522(d)(10)(c)**

Unless it is of inconsequential value or benefit to the bankruptcy estate, an entity that is in possession of estate property during the bankruptcy case that the trustee may use is required to turn the property over to the trustee 11 U.S.C. § 542(a).

AO 72A
(Rev. 8/82)

In Count II of the complaint in this adversary action, the trustee seeks an order pursuant to § 542(a) directing debtor Theodore Helsel to turn over to the trustee the payment in the amount of $3,549.97 he received for the year 2003 as well as those payments he is scheduled to receive in the years 2004 through 2008.

Debtors maintain in their response that debtor Theodore Helsel is entitled to exempt all of these payments in accordance with § 522(d)(10)(E) of the Bankruptcy Code and therefore is not required to turn them over to the trustee.

The bankruptcy estate consists, among other things, of all legal or equitable interests in property a debtor has when the bankruptcy case commences. 11 U.S.C. § 541(a)(1). We have determined that the interest of debtor Theodore Helsel in the above payments for the years 2003 through 2008 is property of the bankruptcy estate.

By claiming that these annual payments are exempt, debtor Theodore Helsel seeks to withdraw the payments from the bankruptcy estate and thus place them beyond the reach of § 542(a). Exemption of an interest in property, if allowed, withdraws or removes that interest from the bankruptcy estate for the benefit of the debtor. Properly exempted property lies beyond the grasp of creditors and generally is immunized against liability for pre-petition debts. *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991).

Subsection 522(d)(10)(E) of the Bankruptcy Code provides in part as follows:

(d) The following property may be exempted under subsection (b)(1) of this section — ....
    (10) The debtor's right to receive — ....
        (E) a payment under a stock bonus, pension, profitsharing annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent

- 14 -

> reasonably necessary for the support of the debtor and any dependent of the debtor ....

11 U.S.C. § 522(d)(10)(E).

Debtor's request for leave to amend the bankruptcy schedules to exempt Mr. Helsel's interest in all of the post-petition annual payments must be denied for a variety of reasons.

A debtor in bankruptcy has an obligation to report any interest he or she has in property, even if it is believed that the asset is worthless or unavailable to the bankruptcy estate. *Matter of Yonikus*, 924 F.2d at 904. If a debtor intentionally conceals or fails to disclose an estate asset, the debtor may be barred from claiming an exemption in that property later on, even if the exemption would have been allowed had it been properly scheduled and then exempted. *Doan v. Hudgins (Matter of Doan)*, 672 F.2d 831, 833 (11th Cir. 1982).

We have determined that debtors knowingly and intentionally did not report debtor Theodore Helsel's interest in the above annual payments. It follows from the just-stated principle of law that debtors' request for leave to exempt that interest must be denied. A debtor may not first attempt to hide an asset and then, after he or she gets caught, seek to retain it for his or her own benefit by trying to exempt it. If an exemption in an asset is appropriate, the debtor should have disclosed the asset and exempted it at the outset of the case.

Even if debtors had been above-board about debtor Theodore Helsel's interest in the above annual payments, leave to amend their schedules to claim an exemption therein would have to be denied for another reason.

By its express terms, a debtor's interest in an annuity may be exempted under § 522(d)(10)(E) "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor".

Whether a particular interest in estate property qualifies for exemption must be determined "as of" the commencement of the bankruptcy case. *Canfield v. Orso (Matter of Orso)*, 283 F.3d 686, 691-92 (5th Cir. 2002). A pronouncement to this effect by the Supreme Court more than eighty years ago in *White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed.2d 301 (1924), remains good law to the present. *Matter of Orso*, 283 F.3d at 692. Because the determination of the propriety of an exemption of necessity is made after the filing of the bankruptcy petition, the court must take a "retrospective snapshot" of the facts as of the instant the case commenced.

According to debtors' schedules, their combined monthly net income exceeded their monthly expenses by $64.21 when their bankruptcy case commenced.

Schedule I, Current Monthly Income Of Individual Debtor(s), indicates that debtors' combined monthly net income at the time was $3,371.00. Included in this total were debtor Theodore Helsel's social security income ($980.00) and his pension from Bethlehem Steel ($886.76). The remaining $1,504.24 of their monthly net income came from debtor Dorothy Helsel's employment as a licensed practical nurse.

Schedule J, Current Expenditures Of Individual Debtor(s), indicates monthly expenses totaling $ 3,306.89. Included among these expenses is a monthly payment of $100.00 to Wolf Furniture, which is listed elsewhere on the schedules as having an undisputed general unsecured claim in the amount of $2,247.98.

- 16 -

Why debtors are making this monthly payment to Wolf Furniture now that they are in bankruptcy is not clear. No explanation was provided. If this payment is excluded from debtors' monthly expenses, as it should be, debtors' monthly net income exceeds their monthly expenses by $164.21.

In an attempt to prove that the above annual payment is reasonably necessary for debtors' support, debtor Theodore Helsel testified that after their bankruptcy case commenced, they had to spend over $4,000 to make major repairs to their automobile, which debtor Dorothy Helsel needs to get to work. No documentary evidence was offered at trial to substantiate this testimony.

Even if we assume that debtor Theodore Helsel's testimony on this point was truthful, it is not relevant to the issue whether the above annual payments are reasonably necessary for debtors' support for purposes of § 522(d)(10)(E). In light of the information provided in Schedule I and Schedule J, we conclude that debtors' monthly net income exceeds their monthly expenses by as much as $164.21 and, as a consequence, that the above annual payments are not exemptible pursuant to § 522(d)(10)(E). Debtors must turn over to the chapter 7 trustee the annual payment in the amount of $3,549.97 debtor Theodore Helsel received for the year 2003 as well as all such annual payments due for years 2004 through 2008.

An appropriate order shall issue.

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

Dated: June 30, 2005

**FILED**

JUN 30 2005

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

AO 72A
(Rev. 8/82)

## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| THEODORE H. HELSEL, SR. and DOROTHY A. HELSEL, | : | Bankruptcy No. 03-30620 BM |
| | : | |
| Debtors | : | Chapter 7 |
| JAMES R. WALSH, TRUSTEE, TRUSTEE OF THE BANKRUPTCY ESTATE, | : : | |
| | : | Adversary No. 04-2423 BM |
| Plaintiff | : : | |
| | : | Complaint To Revoke Discharge And/ |
| v. | : | Or Together With Action To Compel |
| | : | Turnover Of Future Payments Due |
| THEODORE H. HELSEL, SR. and DOROTHY A. HELSEL, | : : | Under Annuity And Account For And Turn Over To Estate Property Received |
| | : | And Expended Since Commencement |
| Defendants | : | Of Case |

### ORDER OF COURT

**AND NOW**, this **30th** day of **June**, 2005, in accordance with the preceding memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that:

(1) the discharges granted to debtor Theodore Helsel and debtor Dorothy Helsel, granted on December 31, 2003, be and hereby are **REVOKED**; said orders are **VACATED**;

(2) debtors' request to amend their exemptions be and hereby is **DENIED**;

(3) debtor Theodore Helsel **SHALL** turn over to the chapter 7 trustee the annual payment in the amount $3,549.97 he received on October 25, 2003; and

(4) Continental Casualty Company **SHALL** pay to the chapter 7 trustee all annual payments debtor Theodore Helsel is scheduled to receive from it in the years 2004, 2005, 2006, 2007, and 2008.

It is **SO ORDERED**.

FILED

JUN 3 0 2005

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

BERNARD MARKOVITZ
U.S. Bankruptcy Judge

AO 72A
(Rev. 8/82)

cm: James R. Walsh, Esq.
Spence Custer Saylor Wolfe & Rose
400 AmeriServ Building
P.O. Box 280
Johnstown, PA  15907

Mark A. Gregg, Esq.
Highland Commons - 2nd Floor
351 Budfield Street
Johnstown, PA  15904-3213

Office of United States Trustee
Liberty Center - Suite 970
1001 Liberty Avenue
Pittsburgh, PA  15222

AO 72A
(Rev. 8/82)